13 99 329    CR RECEIVED
IN THE 13TH COURT OF APPEALS
EDINBURG OFFICE

SEP 13 1999

CATHY WILBORN, CLERK
BY

1    REPORTER'S RECORD

2    VOLUME 2 OF 5 VOLUMES

3    TRIAL COURT CAUSE NO. 96-CR-1627-B

4    - - - - - - - - - - - - - - - x
                                    :
5    THE STATE OF TEXAS            : IN THE DISTRICT COURT
                                    :
6    VS.                           : CAMERON COUNTY, TEXAS
                                    :
7    EDWARD K. LAFONTAINE, A/K/A   :
     EDWARD KENT HAUERSPERGER,     :
8    DEFENDANT                     :
                                    : 138TH JUDICIAL DISTRICT
9    - - - - - - - - - - - - - - - x

10

11

12            MOTION TO RECUSE HEARING

13            On the 23rd day of April, 1999, the following

14   proceedings came on to be heard in the above-entitled and

15   numbered cause before the Honorable Robert Garza, Judge

16   Presiding, held in Brownsville, Cameron County, Texas:

17

18

19

20

21

22

23            Proceedings reported by machine shorthand.

24

25

            ORIGINAL

DELIVERED SEP 1 3 1999

1                           VOLUME 2

2                     MOTION TO RECUSE

3    APRIL 23, 1999                                    PAGE    VOL

4    OPENING STATEMENT BY DEFENSE.......................3      2

5    DEFENDANT'S WITNESSES:
                                                    VOIR
6    NAME                    DX    CX    RDX    RCX    DIRE    VOL

7    LAFONTAINE, EDWARD K.     4     9     15    17     --      2
                                           17    --     --
8
     COURT'S RULING.................................22      2
9
     Adjournment....................................23      2
10
     Court Reporter's Certificate...................24      2
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

                    SUE  CHANEY  SAENZ,  CSR

```
 1                ALPHABETICAL WITNESS INDEX
 2                    MOTION TO RECUSE
 3
```

| NAME | DX | CX | RDX | RCX | VOIR DIRE | VOL |
|------|----|----|-----|-----|-----------|-----|
| LAFONTAINE, EDWARD K. | 4 | 9 | 15 | 17 | -- | 2 |
| | | | 17 | -- | -- | |

```
 6
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

2

```
 1                    A P P E A R A N C E S

 2    APPEARING FOR THE STATE:

 3         HON. JEFF STRANGE
           Assistant District Attorney
 4         SBOT NO. 19355650
           Cameron County Courthouse
 5         974 E. Harrison
           Brownsville, TX   78520
 6         (956) 544-0849
           (956) 544-0869 Fax
 7

 8    APPEARING FOR THE DEFENDANT:

 9         HON. ALFREDO PADILLA
           Attorney at Law
10         SBOT NO. 15404600
           1000 E. Van Buren
11         Brownsville, TX   78520
           (956) 544-7100
12         (956) 544-0647 Fax

13

14

15

16

17

18

19

20

21

22

23

24

25
```

SUE CHANEY SAENZ, CSR

3

**P R O C E E D I N G S**

1
2          THE COURT:  Please be seated.  All right.
3   This is 96-CR-1627-B, State of Texas versus Edward K.
4   Lafontaine.  There is a Motion to Recuse Judge Robert
5   Garza.  I have been assigned to hear this matter.
6   Mr. Padilla, this is your motion.
7          MR. PADILLA:  Yes, Your Honor.  Just to
8   inform the Court so the Court gets some understanding of
9   what happened in this matter,  Judge, previously we were
10  in court back about a week and a half ago concerning a
11  Motion to Revoke filed against Mr. Lafontaine, Judge.
12  Mr. Lafontaine was brought to the courtroom.  There was a
13  discussion between Judge Garza and Mr. Lafontaine
14  concerning the pending Motion to Revoke.  Thereafter,
15  Judge, there was an exchange between the defendant and
16  Judge Garza concerning, you know, the motion and things
17  of that nature, Judge.  There was also some, what I
18  considered to be somewhat of a personal exchange.  So we
19  have filed the motion to recuse Judge Garza, and we would
20  like to offer some evidence on that, Judge.
21          THE COURT:  All right.
22          MR. PADILLA:  I would like to call Mr.
23  Lafontaine to the stand.  Judge, and this again, any
24  testimony he gives here will just be limited for the
25  purpose of this motion, Your Honor.

SUE CHANEY SAENZ, CSR

4

1    THE COURT:  Yes, sir.  Raise your right
2    hand, sir.
3        **(Whereupon the witness was sworn in by the**
4        **Court)**
5        THE WITNESS:  Yes, sir, I will, sir.
6        THE COURT:  Have a seat.
7            **EDWARD K. LAFONTAINE,**
8    having been first duly sworn, testified as follows:
9            **DIRECT EXAMINATION**
10   BY MR. PADILLA:
11       Q.   Sir, can you please state your name for the
12   record?
13       A.   Edward Kent Lafontaine.
14       Q.   Mr. Lafontaine, you are the same Edward K.
15   Lafontaine that was convicted in Cause No. 96-CR-1627-B,
16   sir?
17       A.   Yes, I am.
18       Q.   And as a result of that conviction, you were
19   placed on probation, is that correct?
20       A.   Yes, sir, I was.
21       Q.   And you had several conditions or numerous
22   conditions of probation, is that correct?
23       A.   Yes, sir, I did.
24       Q.   Okay.  Now, you were present and available on
25   the 15th of April of this year when you were brought

SUE CHANEY SAENZ, CSR

5

1   before Judge Garza, is that correct?

2       A.   Yes, sir.

3       Q.   And it's my understanding at the time that you

4   were brought to the hearing, you did apprise Judge Garza

5   that you had been in custody three hundred twenty days

6   and had not been brought down here for the purposes of a

7   hearing on the State's Motion to Revoke?

8       A.   Yes, sir.

9       Q.   And --

10      A.   And that I had been incarcerated the entire

11  time.

12      Q.   Okay, sir.  And the incarceration had occurred

13  in the City of Austin, Travis County, is that correct?

14      A.   Yes, sir.

15      Q.   And from what you have been able to gather, the

16  State, the District Attorney's Office or Cameron County

17  had failed to bring you for the purposes of the hearing,

18  is that correct?

19      A.   Yes, sir.

20      Q.   Did you also allege to the Court that you felt

21  like your right to a speedy trial had been violated?

22      A.   Yes, sir, I did.

23      Q.   And do you remember, sir, that at the time that

24  before the hearing commenced or before the discussion

25  with the Court commenced, I did make a motion to the

1    Court asking that the Motion to Revoke be filed -- be

2    dismissed because of the lack of them bringing you down

3    here having violated your due process rights and also

4    your right to a fair trial or a hearing?

5        A.    Yes, sir.

6        Q.    Do you remember the Court summarily denying

7    that without the opportunity to explain the circumstances

8    surrounding your detention and incarceration?

9        A.    It's my belief that Mr. Garza made -- had no

10   interest in it whatsoever.

11       Q.    Okay.  Did it appear to you that he appeared to

12   be disinterested to your plight of having been

13   incarcerated not having been brought down here on the

14   Motion to Revoke?

15       A.    No interest.  If I may just say something in my

16   own words?

17       Q.    Surely.

18       A.    When it was brought up to Judge Garza the

19   speedy trial and everything, three hundred twenty-one

20   days without a judge, without an attorney, with a no

21   bond, Judge Garza looked at me and smiled and says, well,

22   I don't know how come it took them so long to get you

23   here, but you are here now, so, and that was his entire

24   attitude.  There was no interest in considering anything

25   else.

7

Q.   Do you believe that if you are afforded a
hearing on the actual hearing on Motion to Revoke, that
there is a chance that the Court may not give you a fair
hearing on this matter?

A.   I believe that if the decision -- if his
decision was not already made two years ago, it
definitely was made the other day.  There is no judging,
or I don't know what the word for it, no figuring out
what is right or wrong or anything.  It's just the
decision is already made --

Q.   Do you feel you were not --

A.   -- careless of laws or statutes.

Q.   So do you feel that irregardless of what the
evidence may show at trial, that the Judge is predisposed
to believe that you have violated the Motion to Revoke?

A.   I am certain of it.

Q.   Okay.  Now, there was, was there not, sir, a
personal exchange between you and Judge Garza prior to
your being taken out of the courtroom, is that correct?

A.   Yes, sir, it wasn't right of me, but I was -- I
literally had been looking forward to this.  My
grandmother died, my son became a man, his 18th
birthday --

        MR. STRANGE:  Objection, Judge, this is
irrelevant.

SUE CHANEY SAENZ, CSR

1          THE WITNESS:  It's not irrelevant to me --

2          THE COURT:  Sustained.

3          THE WITNESS:   -- to lose my cool to a

4    Judge, which usually I would not do.

5       Q.   (BY MR. PADILLA) Mr. Lafontaine, now, can you

6    please tell the Court what the exchange was prior to your

7    being taken out of the courtroom?

8       A.   I don't remember exactly.  I told -- I

9    immediately, when Judge Garza was laughing and says,

10   well, we'll just go ahead on it, forget it, you know, it

11   was like basically just I don't care, forget about all

12   that, that don't matter.  I said, you know, I want

13   another Judge, and he said, well, you are not going to

14   get another Judge.  And I said, well, you are prejudiced.

15   He said, well, I am glad you think so.  And the only

16   other thing for certain I can remember is saying that,

17   like I said again, my temper was up, so I turned and I

18   said, well, you need to get a life.  And he said, I have

19   got a life.  And I said, a rotten one, or I think I used

20   some foul language, but -- and there was some other

21   statements that I don't really recall completely.

22      Q.   Sir, do you believe that if Judge Garza was to

23   continue to hear the Motion to Revoke, that that outburst

24   or that exchange may bias or prejudice the Judge toward

25   the merits of your hearing on the Motion to Revoke?

9

1       A.    I believe it could.

2       Q.    And are you asking the Court then to recuse

3   Judge Garza and assign another Judge for the purposes of

4   conducting the hearing on the Motion to Revoke?

5       A.    Yes, I am.

6             MR. PADILLA:  I pass the witness, Judge.

7                      **CROSS-EXAMINATION**

8   **BY MR. STRANGE:**

9       Q.    You were convicted of sexual assault, that's

10  what you were placed on probation for?

11      A.    Yes, sir.

12      Q.    And at least the allegations in your Motion to

13  Revoke Probation was that you never once reported to your

14  probation officer, those are the allegations?  That's a

15  question.

16      A.    I really haven't seen the allegations.

17      Q.    And you were picked up in Austin, at least your

18  understanding is because you hadn't registered as a sex

19  offender as required by the conditions of probation?

20      A.    I was picked up in Austin for violation of

21  probation.

22      Q.    And that was because you hadn't registered as a

23  sex offender?

24      A.    No, it was because Cameron County had issued a

25  warrant for me.

SUE CHANEY SAENZ, CSR

10

```
 1                    THE COURT:  Counsel, let me interrupt a
 2   minute.  We are getting awfully close to going into
 3   what --
 4                    MR. STRANGE:  Your Honor, I am not asking
 5   him to admit anything, I am just talking about the
 6   allegations.
 7                    THE COURT:  What difference does it make?
 8                    MR. STRANGE:  Okay.
 9                    THE COURT:  I can read the allegations.
10                    MR. STRANGE:  I'll move along, Judge.
11        Q.   (BY MR. STRANGE) You were incarcerated for
12   such a lengthy period of time partly because you had a
13   warrant for your arrest in the State of Illinois, isn't
14   that true?
15        A.   No, sir.
16        Q.   Okay.  You were taken from Austin, Texas, and
17   sent up and were placed in custody in Illinois?
18        A.   After Cameron County refused to come get me.
19        Q.   My question to you is, sir, were you sent from
20   Austin?
21        A.   Cameron County said they had --
22                    MR. STRANGE:  Judge, I will ask --
23                    MR. PADILLA:  Judge I'm going to object to
24   the relevancy, Judge, because --
25                    THE COURT:  Answer the question.
```

SUE CHANEY SAENZ, CSR

1    MR. PADILLA:  I'm going to object to the
2  relevancy, Judge, I think that goes to the merits of the
3  Motion to Revoke.
4    THE COURT:  Counsel, y'all have sat here
5  and saying he has been in jail for three hundred twenty
6  days and certainly left me with the impression that he
7  had a Motion to Revoke Probation, he was arrested on that
8  motion and sat in the Travis County Jail for most of the
9  three hundred twenty days until he was brought down here.
10  He is entitled to go into, you know, what else may have
11  been going on or any other -- he is certainly not going
12  to be required to admit guilt on anything.
13    MR. PADILLA:  That's fine Judge.  And I am
14  certainly not going to ask him to.
15    THE COURT:  We are just trying to find out
16  where he was and why.
17    Q.   (BY MR. STRANGE) You were transferred from the
18  Travis County Jail to the custody of the State of
19  Illinois, is that true?
20    A.   Yes, that was after the ten day waiting period
21  for Cameron County, yes, sir.
22    Q.   And how long were you in custody in Illinois?
23    A.   Approximately three months.
24    Q.   And you were in custody in Illinois because you
25  had a pending case up there or a warrant for your arrest?

SUE CHANEY SAENZ, CSR

1      A.   Yes, sir.

2      Q.   And then you were shipped back down here

3  pursuant to a Governor's warrant, is that true?

4      A.   I don't know about all that, no.  I seriously

5  doubt that.

6      Q.   Did you contest the extradition?

7      A.   No, I did not.  I was dying to get here.

8      Q.   If you would do me a favor, I am going to ask

9  you questions and then you can provide whatever answers

10  to the questions?

11                MR. PADILLA:  May I have Mr. Strange sit

12  down, Judge?

13      Q.   (BY MR. STRANGE) Your problem with the Judge

14  is, it's my understanding, is you think he is mad at you

15  because you told him to get a life?

16      A.   That's part of it, yes.

17      Q.   And so that was a conversation that you

18  initiated, true?

19      A.   No, I don't believe so.

20      Q.   You agree that --

21      A.   I believe it was initiated when Judge Garza

22  ignored the fact that there was a due process factor

23  involved.  Laughingly so, ignored it.

24      Q.   Well, you don't know Judge Garza, do you?  You

25  don't know him personally, you've just appeared before

1   him?

2       A.    I only know him as a Judge.  That's what I am

3   dealing with here is him as a Judge.  I don't know

4   anything about his private life, no.

5       Q.    And you don't have any idea of what he knows

6   about your Motion to Revoke Probation, do you?

7       A.    Excuse me?

8       Q.    You have no idea what personal knowledge he has

9   regarding your Motion to Revoke Probation, do you?

10      A.    Yes, I do.

11      Q.    You have no first hand knowledge as far as --

12      A.    Yes, sir, I do.

13      Q.    -- what Judge Garza has been told?

14      A.    I am pretty sure that he has been told

15  everything.

16      Q.    You understand that pretty sure is not the same

17  as having personal knowledge?

18      A.    Sir, I have written to him and I know he has

19  questioned the letters.  I have gotten no return on the

20  letters, but unless all the letters delivered, sent to

21  Judge Garza, get sent to the lost in the United States

22  Mail Department, I am assuming he received them.

23      Q.    Your basis for recusing Judge Garza is because

24  of the exchange you had in the courtroom?

25      A.    Right, my belief that he is prejudiced.

SUE CHANEY SAENZ, CSR

14

1    Q.    He is prejudiced against you or prejudiced

2    against what?

3    A.    In general, he is prejudiced against anyone

4    that comes in his courtroom that's not an attorney.

5    Q.    And that is just based on observations that you

6    made in the courtroom?

7    A.    Yes, it is.

8    Q.    And again, I go back to you have no personal

9    knowledge as far as what Robert Garza knows about your

10   Motion to Revoke Probation other than the allegations

11   contained in the Motion to Revoke Probation?

12   A.    I don't really understand you.

13   Q.    You don't know what Judge Garza knows about the

14   facts of the case, you just know that he knows what's in

15   the Motion to Revoke Probation?

16   A.    I know he refuses to hear facts.

17   Q.    And that is because --

18   A.    When you ignore facts, I know what he doesn't

19   know.

20          MR. STRANGE:    Judge, would you please

21   admonish the witness to answer any questions and shut up?

22          MR. PADILLA:    Judge, he has answered the

23   question.

24          THE COURT:    Let's move along.    Try to be

25   specific with your answer.

SUE CHANEY SAENZ, CSR

15

1      MR. PADILLA:  He is asking a generality
2  and he is getting upset because he is answering his
3  questions.
4      THE COURT:  I ruled on it, counsel.  Do we
5  have a question?
6      MR. STRANGE:  Judge, I don't have any more
7  questions for this person.
8      THE COURT:  Mr. Padilla?
9      MR. PADILLA:  Yes.
10      **REDIRECT EXAMINATION**
11  BY MR. PADILLA:
12      Q.   Mr. Lafontaine, the exchange that occurred, and
13  Judge Garza did question you if you were the same person
14  and started questioning you about if you knew about the
15  Motion to Revoke and things of that nature, is that
16  right?
17      A.   Yes.
18      Q.   So I'm --
19      THE COURT:  I sneezed and I didn't hear
20  the question.
21      MR. PADILLA:  The question was, Judge,
22  if --
23      Q.   (BY MR. PADILLA) At the inception Judge Garza
24  began asking you questions about the Motion to Revoke, is
25  that correct?

SUE CHANEY SAENZ, CSR

1     A.   Yes, sir.

2     Q.   And if you were the same person, if you

3 understood what the charges were against you, is that

4 correct?

5     A.   Yes, sir.

6     Q.   Okay.  And so the exchange then that occurred

7 was after Judge Garza made an inquiry of you asking you

8 whether you were the same person and whether you

9 understood the charges against you in the Motion to

10 Revoke, is that correct?

11    A.   Yes.

12    Q.   As a matter of fact, did he not ask you whether

13 you intended to plead true or not true to the violation

14 as outlined in this motion?

15    A.   Yes, he did.

16    Q.   So the exchange or the circumstances that came

17 to be, that came into existence once you informed the

18 Court that you intended to plea not true to the

19 allegations, is that correct?

20    A.   Yes, sir.

21    Q.   Okay.

22         MR. PADILLA:  That's all I have, pass the

23 witness.

24

25

SUE CHANEY SAENZ, CSR

1                    RECROSS-EXAMINATION
2    BY MR. STRANGE:
3        Q.    So basically your problem with Judge Garza is
4    you think he got mad with you because you behaved
5    inappropriately in court?
6        A.    Judge Garza was very angry at me two years ago,
7    and he got angrier at me this time, yes.
8                    MR. STRANGE:    Judge --
9                    THE WITNESS:    Actually, Judge Garza was
10   angry at the jury for giving me probation.
11                   MR. STRANGE:    This is going no where,
12   Judge, I have no further questions of this man.
13                   THE WITNESS:    It's --
14                   THE COURT:    That's all the questions.
15                FURTHER REDIRECT EXAMINATION
16   BY MR. PADILLA:
17       Q.    Again, sir, without being too redundant, you
18   believe that if required to be -- if the Motion to Revoke
19   is heard by Judge Garza, you believe that you would not
20   be afforded a fair hearing and this would violate your
21   Constitutional rights to due process and a fair trial, is
22   that your understanding?
23       A.    That is it.
24       Q.    And that's your belief?
25       A.    Yes, it is.

18

```
 1        Q.   And is that why you are asking that Judge Garza
 2   be recused from this case?
 3        A.   Yes, sir, it is.
 4                  MR. PADILLA:  Pass the witness.
 5                  MR. STRANGE:  Judge, I have nothing
 6   further.
 7                  MR. PADILLA:  I have nothing further.
 8                  THE COURT:  You may step down -- well, let
 9   me ask him something, I got interrupted.  This thing
10   occurred about a week ago.  As I understand it, well,
11   maybe you better clarify it for me.  You indicated in
12   your earlier testimony that you had been in jail
13   something like, I thought you said three hundred
14   twenty-one --
15                  THE WITNESS:  Yes, sir.
16                  THE COURT:  That's the number?  And that's
17   as of when?
18                  THE DEFENDANT:  On that date.
19                  THE COURT:  As of that day, you had been
20   in jail --
21                  THE WITNESS:  Yes, sir.
22                  THE COURT:  Okay.  Three hundred
23   twenty-one, that's not quite eleven months.  As I
24   understand your testimony, a Motion to Revoke was filed,
25   you were arrested on that Motion to Revoke in Austin,
```

SUE CHANEY SAENZ, CSR

1    Travis County, Texas, approximately three hundred

2    twenty-one days before.

3                    THE WITNESS:  April 30th I was arrested,

4    sir, 1998.

5                    THE COURT:  So you went into jail in

6    Austin on that -- for the sole reason that you had a

7    Motion to Revoke Probation?

8                    THE WITNESS:  Yes, sir.

9                    THE COURT:  Now, you said something in

10   your testimony something about they didn't pick you up in

11   ten days.  Are you talking about ten days from your

12   original arrest?

13       A.   No, sir.

14       Q.   When are you talking about?

15       A.   After a while, Cameron County wasn't going to

16   come get me.  Austin says, well, we can get him for

17   failure to register, which the prosecutor at that time

18   was trying to say was a State Jail felony, which it

19   wasn't under old law or whatever, but the prosecutor says

20   well, we don't care about, you know, y'all take him and

21   do whatever you are going to do.  This is what my

22   attorney appointed to me there has told me.  Y'all take

23   him and do whatever you are going to do, and we'll follow

24   suit.  If you go ahead and send him to prison, we are

25   going to give him prison on this.  If you reinstate his

SUE CHANEY SAENZ, CSR

1    probation, we are going to probate this.  That is the way

2    that the prosecutor and Travis County wanted to do it.

3                    THE COURT:  So there was a charge in

4    Travis County then.  Whether it was a valid one or not,

5    there was a charge pending?

6                    THE DEFENDANT:  Right, they -- right.

7    And --

8                    THE COURT:  What I am trying to get at

9    then is at what point, and if you don't have an exact

10   date, that's understandable, but approximately, give me

11   as close as you can get, when was it that somebody timely

12   laid down the law and says Cameron County, come get that

13   guy from Austin?

14                   THE WITNESS:  From Austin?

15                   THE COURT:  When did that happen?  More or

16   less, you know, a month?

17                   THE WITNESS:  The first part of November.

18                   THE COURT:  So you were.

19                   THE WITNESS:  No, no, no, I am incorrect,

20   I apologize.  September.

21                   THE COURT:  September.

22                   THE WITNESS:  At the end of September,

23   first part of the October.

24                   THE COURT:  So you were in Travis County,

25   I think you said the end of April up until?

SUE CHANEY SAENZ, CSR

1          THE WITNESS:  It would have been the first
2    part of November.
3          THE COURT:  But when that happened,
4    somebody said okay, Cameron County is not coming just for
5    you, and apparently by this time, there was something --
6          THE WITNESS:  To the point that my
7    entire --
8          THE COURT:  Illinois wanted you.
9          THE DEFENDANT:  To the point, to the
10   point, sir, that my entire Texas criminal practice guide
11   was thrown away by the transport officers because they
12   were no longer needed, I had no charges in Texas now.  I
13   was going to Illinois.
14         THE COURT:  So you were going to Illinois,
15   and you went to Illinois about November?
16         THE WITNESS:  Yes, sir.
17         THE COURT:  And how long were you in
18   Illinois?
19         THE WITNESS:  February the 25th, I became
20   exclusively the property of Cameron County only.
21         THE COURT:  So you came directly from
22   Illinois back to Cameron County?
23         THE WITNESS:  Yes, just as quick as
24   they --
25         THE COURT:  So late February, and this

SUE CHANEY SAENZ, CSR

22

1    would have been -- so you were about two months in the
2    Cameron County Jail before you went before Judge Garza?
3              THE WITNESS:  Right about a month and a
4    half.  And it's something, well, all the warrants say ten
5    days after arrest.
6              THE COURT:  Okay.  Anything further?
7              MR. PADILLA:  No, Judge.
8              MR. STRANGE:  Judge, it's my understanding
9    we are just having a hearing to recuse Judge Garza.
10             THE COURT:  Yes, I am just trying to get
11   square on where he was and --
12             MR. PADILLA:  Judge, I think it probably
13   leads to some of the frustration that the defendant felt
14   at the hearing also, Judge.
15             THE COURT:  You have no further evidence?
16             MR. PADILLA:  No, Your Honor.
17             THE COURT:  Any evidence from the State?
18             MR. PADILLA:  No Judge.
19             THE COURT:  All right.  The Court is going
20   to overrule the Motion to Recuse.  I don't find anything
21   in this that was not prompted by the defendant's
22   outburst, and the Judge's ruling would indicate that he
23   could not be fair and impartial in the case.  It's his
24   job to be fair and impartial, whether he likes the
25   defendant or not, I trust that he will be.  The motion is

SUE CHANEY SAENZ, CSR

23

1    overruled.

2              Since that has happened -- I know there

3    are some other pending motions, but my charge was only as

4    to the Motion to Recuse, so I'll return this file to the

5    138th for their tending to the other motions.

6              MR. PADILLA:  Yes, sir.

7              We'll be in recess.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

SUE CHANEY SAENZ, CSR

THE STATE OF TEXAS:

COUNTY OF CAMERON:

### CERTIFICATE OF COURT REPORTER

I, SUE CHANEY SAENZ, Official Court Reporter in and for the 103rd Judicial District Court of Cameron County, State of Texas, do hereby certify that the above and foregoing contains a true and correct transcription of all portions of evidence and other proceedings requested in writing by counsel for the parties to be included in this volume of the Reporter's Record, in the above-entitled and numbered cause, all of which occurred in open court or in chambers and were reported by me.

I further certify that this Reporter's Record of the proceedings truly and correctly reflects the exhibits, if any, admitted by the respective parties.

I further certify that the total cost for the preparation of this Reporter's Record is $ 112.00 and was paid/will be paid by CAMERON COUNTY.

WITNESS MY OFFICIAL HAND on this the 9th day of August, 1999.

SUE CHANEY SAENZ, Texas CSR
Official Court Reporter
103rd District Court
974 East Harrison Street
Brownsville, Texas 78520
(956) 544-0844
Certificate No. 2136
Expiration Date: 12/31/00

SUE CHANEY SAENZ, CSR