CAUSE NO. 13-99-00329-CR

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

IN THE COURT OF APPEALS

THIRTEENTH JUDICIAL DISTRICT

NUECES COUNTY, TEXAS

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

EDWARD LAFONTAINE, Appellant

v.

STATE OF TEXAS, Appellee

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

STATE'S APPELLATE BRIEF

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

ON APPEAL FROM
THE 138TH JUDICIAL DISTRICT COURT
HON. ROBERT GARZA,
JUDGE PRESIDING
CAUSE NO. 96-CR-1627-B
STATE v. EDWARD K. LAFONTAINE,
A/K/A EDWARD KENT HAVERSPERGER

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

YOLANDA de LEON
Cameron County (Criminal District) Attorney
JOHN A. OLSON
Assistant County (Criminal District) Attorney
974 East Harrison St.
Brownsville TX. 78520
956.544.0849/956.544.0869:Fax

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

F I L E D
IN THE 13TH COURT OF APPEALS
CHRISTI

MAY 0 4 2000

BY ...., WILBURN, CLERK

RECEIVED MAY - 4 2000

## TABLE OF CONTENTS

PAGE

TABLE OF AUTHORITIES .......................................... i-iv

SALUTATION .................................................... 1

PROCEDURAL HISTORY ........................................... 1-2

STATE'S RESPONSE TO APPELLANT'S FIRST POINT ................... 2-12

    1.    THE LAW ........................................... 2-3
    2.    THE RECORD ........................................ 3-6
    3.    AN APPLICATION OF THE LAW TO THE RECORD ........... 6-12

STATE'S RESPONSE TO APPELLANT'S SECOND POINT ................. 12-16

    1.    THE LAW ........................................... 12-14
    2.    THE RECORD ........................................ 14-16
    3.    AN APPLICATION OF THE LAW TO THE RECORD ........... 16

STATE'S RESPONSE TO APPELLANT'S THIRD POINT .................. 16-21

    1.    THE LAW ........................................... 17-18
    2.    THE RECORD ........................................ 18-21
    3.    AN APPLICATION OF THE LAW TO THE RECORD ........... 21

PRAYER ....................................................... 21

CERTIFICATE OF SERVICE ....................................... 22

## TABLE OF AUTHORITIES

CASES

Arnold v. State, 853 S.W.2d 543 (Tex. Crim. App. 1993) ................... 17, 19

Atkins v. State, 919 S.W.2d 770 (Tex. App.--Hous. [14th Dist.] 1996, no pet.) ..... 13

Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972) . 2, 3, 6, 7, 8, 9

Bee v. State, 974 S.W.2d 184 (Tex. App.--San Antonio 1998, no pet.) ........... 18

i

CASES (Cont'd)                                                                    Page

Bruno v. State, 916 S.W.2d 4 (Tex. App.--Hous. [1st Dist.]  1995, pet. ref'd), reh'g denied,
937 S.W.2d 121 (Tex. App.--Hous. [1st Dist.] 1996, no pet.) . . . . . . . . . . . . . . . . . 18

Burke v. State, 6 S.W.3d 312 (Tex. App. -- Ft. Worth 1999, no pet.) . . . . . . . . . . . 13

Burks v. State, 876 S.W.2d 877 (Tex. Crim. App. 1994), *cert.* denied, 513 U.S. 1114, 115
S.Ct. 909, 130 L.Ed.2d 791 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13-14

Butler v. State, 733 S.W.2d 400 (Tex. App. -- Ft. Worth 1987, no pet.) . . . . . . . . 3, 8

Carney v. State, 573 S.W.2d 24 (Tex. Crim. App. 1978, *en banc*) . . . . . . . . . 2, 9, 11

Champion v. State, 590 S.W.2d 495 (Tex. Crim. App. 1979 [Panel Op.]) . . . . . . . . . 3

Collins v. State, 664 S.W.2d 375 (Tex. App. -- Corpus Christi 1983, no pet.) . . . . 3, 10

County v. State, 668 S.W.2d 708 (Tex.Crim.App.1984),
overruled, o.g., Holladay v. State, 709 S.W.2d 194 (Tex. Crim. App. 1986) . . . . . . . . 10

Davila v. State, 871 S.W.2d 806 (Tex. App. --Corpus Christi 1994, pet. ref'd)
 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 6, 8, 10, 11

Earley v. State, 855 S.W.2d 260 (Tex. App.--Corpus Christi 1993), pet. dism'd,
improvidently granted, 872 S.W.2d 758 (Tex. Crim. App.1994) . . . . . . . . . . . . . . . 17

Emery v. State, 881 S.W.2d 702 (Tex. Crim. App. 1994) . . . . . . . . . . . . . . . . . . . 6

Greer v. State, 999 S.W.2d 484 (Tex. App.--Hous. [14th Dist.] 1999, no pet.)
 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11-12, 12

Haas v. State, 498 S.W.2d 206 (Tex. Crim. App. 1973) . . . . . . . . . . . . . . . . . . . 9

Hanley v. State, 921 S.W.2d 904 (Tex. App. -- Waco 1996, pet. ref'd) . . . . . . 2, 14, 16

Harris v. State, 827 S.W.2d 949 (Tex. Crim. App.1992, *en banc*) . . . . . . . . . . . . . 2, 7

Hernandez v. State, 556 S.W.2d 337 (Tex.Crim.App.1977) . . . . . . . . . . . . . . . . 2, 10

Janecka v. State, 937 S.W.2d 456 (Tex. Crim. App. 1996, *en banc*) . . . . . . . . . . . 13

CASES (Cont'd)                                                        Page

Kemp v. State, 846 S.W.2d 289 (Tex. Crim. App.1992, *en banc*), cert. den'd, 508 U.S. 918, 113 S. Ct. 804, 124 L. Ed.2d 268 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Lazcano v. State, 836 S.W.2d 654 (Tex. App.--El Paso 1992, pet. ref'd) . . . . . . . . . 6

Ludlow v. DeBerry, 959 S.W.2d 265 (Tex. App.-- Hous. [14th Dist.] 1997, no pet.) . 18

McFarland v. State, 928 S.W.2d 482 (Tex.Crim.App.1996, *en banc*), *cert.* denied, 519 U.S. 1119, 117 S.Ct. 966, 136 L. Ed.2d 851 (1997) . . . . . . . . . . . . . . . . . . . . . . . . 13

Menchaca v. State, 901 S.W.2d 640 (Tex. App.--El Paso 1995, pet. ref'd) . . . . . . . . 13

Oliver v. State, 731 S.W.2d 149 (Tex. App.--Ft. Worth 1987, pet. ref'd) . . . . . . . . . . 1

O'Neal v. State, 623 S.W.2d 660 (Tex. Crim. App. 1981) . . . . . . . . . . . . . . . . . 11, 12

Orosco v. State, 827 S.W.2d 575 (Tex.App.--Ft. Worth 1992, pet. ref'd), *cert.* denied, 506 U.S. 960, 113 S.Ct. 425, 121 L.Ed.2d 347 (1992) . . . . . . . . . . . 10

Phillips v. State, 650 S.W.2d 396 (Tex.Crim.App.1983) . . . . . . . . . . . . . . . . . . . . . . 10

Phipps v. State, 630 S.W.2d 942 (Tex. Crim. App. 1982 [Panel Op.]) . . . . . . . . . . . 7

Ramirez v. State, 897 S.W.2d 428 (Tex.App.--El Paso 1995, no pet.) . . . . . . . . . . . 1

Sanders v. State, 963 S.W.2d 184 (Tex. App. -- Corpus Christi 1998, pet. ref'd) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

Soderman v. State, 915 S.W.2d 605 (Tex. App.--Hous. [14th Dist.] 1996, pet. ref'd) 19

Stafford v. State, 948 S.W.2d 921 (Tex. App.--Texarkana 1997, pet. ref'd) . . . . . . . 19

State v. Flores, 951 S.W.2d 134 (Tex. App. -- Corpus Christi 1997, no pet.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2-3, 6, 7, 10, 11

State v. Gonzalez, 820 S.W.2d 9 (Tex. App. -- Dallas 1991), affirmed, 855 S.W.2d 692, 697 (Tex. Crim. App. 1993, *en banc*) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

State v. Pierce, 816 S.W.2d 824 (Tex. App.-- Austin 1991, no pet.) . . . . . . . . . . . . . 13

iii

CASES (Cont'd)                                                                                          Page

State of Texas ex  rel. Eidson v. Edwards, 793 S.W.2d 1 (Tex. Crim. App. 1990, *en banc*)(Op. on State's mot. for reh'g)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  14

State ex rel. Hilbig v. McDonald, 877 S.W.2d 469 (Tex. App. -- San Antonio 1994, no writ) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  14

Tooke v. State, 642 S.W.2d 514 (Tex. App. --Hous. [14th Dist.] 1982, no pet.)  . . . .  13

Vuong v. State, 830 S.W.2d 929 (Tex.Crim.App.1992, *en banc*)  . . . . . . . . . . . . . .  13

CODES

Tex. Code Crim. Proc. art. 32A.02 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3

Tex. Code Crim. Proc. art. 42.12, §8(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3, 10

Tex. Local Govt. Code, §87.013  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  14

Tex. Penal Code §22.011(a)(1)(A)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

RULES

Tex. R. App. Proc. 33.1(a)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

Tex. R. App. Proc. 38.1(h) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  12, 13, 16, 21

Tex. R. Civ. Proc. 18a(a)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  17

Tex. R. Civ. Proc. 18a(f)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  18

CAUSE NO. 13-99-00329-CR

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

IN THE COURT OF APPEALS

THIRTEENTH JUDICIAL DISTRICT

NUECES COUNTY, TEXAS

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

EDWARD LAFONTAINE, Appellant

v.

STATE OF TEXAS, Appellee

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

STATE'S APPELLATE BRIEF

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

TO THE HONORABLE JUSTICES OF SAID COURT:

Comes now Appellee State of Texas, by its County (Criminal District) Attorney, Yolanda de Leon, and submits its appellate Brief for receipt in the above-styled and -numbered cause of action, pending the Court's ruling on a companion unopposed motion for leave to late-file it.

PROCEDURAL HISTORY

Appellant was charged with the felony offense of Sexual Assault in Cause No. 96-CR-1627-B, styled State of Texas v. Edward K. Lafontaine, A/K/A Edward Kent Haversperger. (Clerk's R., at 8); **Tex. Penal Code §22.011(a)(1)(A)**. On his plea of not guilty, Appellant was found guilty of that offense, and he was sentenced to 10 years in the

1

penitentiary, which was probated for as many years. (Clerk's R., at 3-4)

On May 10, 1999, Appellant's probation was revoked on the State's third amended motion to revoke.

### STATE'S RESPONSE TO APPELLANT'S FIRST POINT

Appellant complains that his federal right to a Speedy Trial was violated, arguing that he had been incarcerated 321 days before there was a hearing on the State's third amended motion.  The State responds the Issue should be overruled.

1.    THE LAW.

To preserve a complaint for appellate review, the complaining party must make a timely, specific objection and obtain a ruling on it. **Tex. R. App. Proc. 33.1(a)**.  Additionally, an appellate point must comport with the trial complaint.  A trial objection stating one legal theory may not be used to support a different appellate legal theory. **Hanley v. State**, 921 S.W.2d 904, 909  (Tex. App. -- Waco 1996, pet. ref'd).

There is no question that a defendant has a constitutional right to a speedy hearing on a revocation motion. **Carney v. State**, 573 S.W.2d 24, 26 (Tex. Crim. App. 1978, *en banc*); **Hernandez v. State**, 556 S.W.2d 337, 340 (Tex. Crim. App.1977).  In **Barker v. Wingo**, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), the Supreme Court adopted a four-prong balancing test to determine whether a defendant's Sixth Amendment right was violated, a test that has been adopted by this State. The four factors generally considered are: 1) the length of the delay; 2) its reason; 3) the defendant's assertion of his right; and 4) the prejudice to the defendant. **Harris v. State**, 827 S.W.2d 949, 956 (Tex. Crim. App.1992, *en banc*); **Carney**, 573 S.W.2d at 26-27; **State v. Flores**, 951 S.W.2d 134, 137

2

(Tex. App. -- Corpus Christi 1997, no pet.); **Davila v. State**, 871 S.W.2d 806, 809 (Tex. App. -- Corpus Christi 1994, pet. ref'd); & **Collins v. State**, 664 S.W.2d 375, 377 (Tex. App. -- Corpus Christi 1983, no pet.), each citing **Barker**, *supra*.

This constitutional right is distinguished from any right granted under **Tex. Code Crim. Proc. art. 32A.02**, which was called the Texas Speedy Trial Act and held to be unconstitutional. **Butler v. State**, 733 S.W.2d 400, 401 (Tex. App. -- Ft. Worth 1987, no pet.). Contrary to Appellant's claim, *Brief*, at 7-8, **Art. 32A.02**, *supra*, does not apply to revocation motions. **Champion v. State**, 590 S.W.2d 495, 498 (Tex. Crim. App. 1979 [Panel Op.]). In addition to his State and federal rights to a speedy hearing, a probationer can avail himself to the remedy provided for in **Tex. Code Crim. Proc. art. 42.12, §8(a)**.

2.    THE RECORD.

Although Appellant's docket sheet shows that he filed a motion to dismiss "for violation of the Speedy Trial Act" (Clerk's R., at 5), he did not submit it for the Court's review. (*Id*., at 32) And though he claims that there was a **Barker** violation, he never cited that case in support of his argument that the trial court should dismiss the State's motion. In fact, he referenced **Art. 32A.02**'s "180 day" time frame when examining a State attorney and himself. (Reporter's R. 3, Pp. 17-18, Lines 22-3; P. 30, Lines 8-11, 13-16)

In relevant part, Appellant argued that his constitutional rights to speedy hearing under the State's Code of Criminal Procedure was violated because he had been in jail from May 30, 1998 through November. However, the district attorney and Cameron County Probation Department failed to take any action to produce Appellant so he could have a hearing. (Pp. 77-78, Lines 25-9)

That inaction was a violation of Appellant's due process rights as guaranteed him by the State and federal constitutions. Also, the testimony was clear that, as a result of the delay, the State added "additional charges, additional failures to report, things of that nature." Not only had Appellant been prejudiced for not being able to be released from custody, he was also prejudiced because the State's actions or inactions amounted to a violation of his due process right. (P. 78, Lines 10-24)

Furthermore, the Cameron County District Attorney's office had a vested interest in attempting to prosecute Appellant because it had been lax in prosecuting his case. The only reason why a hearing was conducted with enthusiasm was due to Appellant's attempt to exercise his constitutional rights to a fair hearing. Therefore, the district attorney's office should be disqualified by law in prosecuting Appellant because of their vested interest of presenting their own rights, and not actually "the right of the state of Texas." The State's actions, demeanor and attitudes, violated Appellant's constitutional rights, and the office should be disqualified. (P. 79, Lines 5-18)

If the trial court didn't agree with that request, Appellant continued, it should find there was a delay in bringing his case forward, which violated his constitutional rights to due process, and order him released to continue on probation for the remainder of his probation's term. (Lines 19-25)

The State argued that the statute Appellant referenced had been declared to be unconstitutional and the evidence did not support his allegations. And while Appellant had been incarcerated since May 1998, as of September 1998, he was not released to Cameron County's custody because he already had a trial date in Travis County, which

4

refused to release him. Only in November 1998 was Cameron County able to go pick Appellant up, but he was not released; Logan County, Illinois picked him up. The State did everything possible to produce Appellant, whose own exhibits showed that he had a hold from that county, thereby preventing Cameron County from being the first to take him. (Pp. 80-81, Lines 9-3) In fact, Logan County took Appellant and kept him in Illinois. Only when they were done with him was Cameron County able to bring him back to face revocation.

Respecting the State's amended motion to revoke, it was only clarified; the district attorney's office did not act in bad faith by adding new charges. (P. 81, Lines 7-16)

Appellant countered that on November 9, Travis County called the Cameron County Sheriff's Office, and advised them that they had ten days to pick him up, that they were through with him. (P. 81, Lines 18-25) Appellant's evidence showed that he was not transferred out of Travis County to Logan County until November 19. So Cameron County had ten days to go pick up Appellant but didn't; all it did was call up there once; that showed lack of due diligence. (P. 82, Lines 1-18)

The trial court agreed that Appellant had been in detention for quite a period of time, a fact he had expressed throughout the time "that he was here." However, his record reflected that the trial court issued many bench warrants since August 1998 to try to get him to Cameron County for trial. (Accord P. 52, Lines 5-16) In fact, there was a witness notation that Travis County would not release him one time and, later on, when they went to get Appellant, he was not there. (Pp. 82-83, Lines 19-7)

Respecting the State's amended motion, it did not allege anything different from its second motion. If the district attorney's office were acting vindictively, as Appellant

5

asserted, it certainly would have put another criminal case, the plea to which he said he had withdrawn /1/, in its third amended motion, but it did not. (P. 83, Lines 15-21) In sum, there was "some lack of diligence," but the trial court was not going to find that it rose to the level of a dismissal. Bench warrants had been issued, "everything" was in proper form, and other places had jurisdiction over Appellant. (Pp. 83-84, Lines 22-4)

3.    AN APPLICATION OF THE LAW TO THE RECORD.

Appellant's Point should be overruled its failure to show that he lodged a timely and specific objection to the trial court's ruling on his Speedy Trial motion. (P. 84, Line 10) His Point should also be overruled through its failure to show an abuse of discretion.

In **Flores**, *supra*, this Court held that, while the primary burden for assuring that cases are promptly brought to trial lies with the State, a defendant has the burden of first showing that sufficient delay has occurred to require application of **Barker's** balancing test. *Id.*, at 137.  In **Davila**, *supra*, this Court held that the "delay in commencement of the trial must be of sufficient length to be presumptively prejudicial before a review of [**Barker's**] remaining three factors is triggered." *Id.*, at 809; Accord **Emery v. State**, 881 S.W.2d 702, 708 (Tex. Crim. App. 1994) & **Lazcano v. State**, 836 S.W.2d 654, 657 (Tex. App.--El Paso 1992, pet. ref'd).  The Court of Criminal Appeals and this Court have noted that a delay of eight months or longer from the date one was arrested or formally accused is

_____

/1/ There is only one reference to a "withdrawn" plea, and that testimony related to Appellant's Illinois conviction. (Reporter's R. 3, P. 37, Lines 12-13)

6

presumptively unreasonable and triggers **Barker's** remaining analysis. **Harris**, 827 S.W.2d at 949; **Flores**, 951 S.W.2d at 140. However, that presumption is rebuttable. **Flores**, 951 S.W.2d at *id*. In some cases, delays of three to four years have been upheld. **Phipps v. State**, 630 S.W.2d 942, 946 (Tex.Crim.App. 1982 [Panel Op.]).

The State did not contest or rebut Appellant's claim that he was continuously incarcerated on the strength of its motion capias in either Travis County, Texas from May 30, 1998 until May 10, 1999, the date the State's motion was heard. (Reporter's R. 4) However, Appellant's argument failed to contest or rebut other evidence as mitigating the import of that incarceration: 1) Cameron County first attempted to take him into custody on September 3, 1998, but he was not released to its deputies. (P. 16, Lines 18-23); 2) on November 8, 1998, Cameron County was again notified he was ready for release, but before deputies arrived with a bench warrant, Appellant had been released to Logan County (Pp. 49-50, Lines 7-1), and it is not clear when he was returned to Travis County; 3) when he was asked the basis for his belief that his "rights to a fair trial and a fair hearing have been violated by the State's delay," Appellant answered "Not enough room in the jails, maybe?" (P. 30, Lines 20-25); and 4) Appellant also agreed that no additional allegations had been added to the State's subsequent motions to revoke. (P. 31, Lines 1-5)

In sum, if there were a delay, it was between May 30 and September 3, 1998 and between February 25, 1999, the date Cameron County took him into custody (Reporter's R. 3, P. 27, Lines 15-17; P. 58, Lines 10-12), and May 10, a period of about 6 months, two months less than **Barker's** time "trigger." Appellant unavailable to Cameron County's process the rest of the time because he was held on charges in other jurisdictions.

7

(Reporter's R. 3, P. 4, Lines 22-25); See **Davila**, *supra*: The record does not indicate a deliberate attempt by the prosecution to delay the proceedings. *Id.*, at 809.

In **Butler**, *supra*, the State filed petitions to revoke Butler's probation on January 26, 1984, alleging that he had failed to report and pay probation fees, and a capias was issued. An arrest warrant was executed nearly 2 ½ years later, after which time the State amended its petitions alleging his continuing failure to report during 1984, 1985 and 1986. On November 18, 1986, a hearing on the petition was held, at which time Butler's probation was revoked. In his sole point, Butler claimed that his revocation was invalid because the State did not exercise due diligence in securing his presence, thereby denying "his right to a constitutional speedy trial." The appeals court held that Butler failed to satisfy **Barker's** first test factor, noting that the delay he complained of was the 2 ½ years prior to his arrest, and that there was ample evidence at the hearing that the State made attempts to arrest him and that he was avoiding arrest. Therefore, it found Butler had been denied no constitutionally guaranteed rights." *Id.*, at 401. As for his diligence argument, the appeals court noted that Butler cited "no authority in support of this novel argument, and we find none." *Id.* The State submits that Appellant's argument failed to cite authority that compels the relief he seeks.

Assuming the Court were to disagree with the foregoing analysis, the State asks it to next agree that Appellant's argument does not show that **Barker's** other factors were triggered.

### The Reason for the Delay

Appellant's record shows the State's first revocation motion was filed on August 1,

8

1997 and its third amended motion on April 28, 1999. (Clerk's R., at 5, 23)  Neither side developed testimony why, if it was learned Appellant was in Travis County in April 1998 (Reporter's R. 3, P. 15, Lines 10-12), the State's first attempt to acquire his presence was not until September 1998.  However, an unexplained delay in the prosecution of an incarcerated defendant does not constitute a *per se* violation of one's constitutional right to a speedy trial. **Haas v. State**, 498 S.W.2d 206, 211 (Tex. Crim. App. 1973).

What Appellant's record does show is that 1) Appellant used an alias when he was in Travis County, Texas (Reporter's R. 3, P. 33, Lines 5-6, 17-25); 2) Cameron County deputies were twice prevented from producing him in September and November 1998; and 3) in addition to the State's original 1997 capias, several bench warrants and other capias were filed in August, September, and October 1998. (Clerk's R., at 4, 5)

In **Carney**, *supra*, Carney complained about 9 months which elapsed between the dismissal of the original motion to revoke, which occurred on the same day he filed his only request for a speedy hearing, and the filing of the State's new motion to revoke.  After noting that the delay was caused by Carney's appeal of another conviction, on which the State was relying to support its motion to revoke, the appeals court held "This was not a deliberate attempt by the State to delay the hearing ... to hamper the defense, but was a valid reason ... justifying an appropriate delay." *Id.*, at 26, citing **Barker**, *supra*.  Also, Carney demonstrated no significant prejudice to him as a result of the delay. *Id.*

Appellant's Assertion of his Right

Although a defendant's failure to demand a Speedy Trial does not permit a presumption of its waiver, an absence of a timely request strongly indicates that he did not

9

really want one. **Flores**, 951 S.W.2d at 141; **County v. State**, 668 S.W.2d 708, 712 (Tex.Crim.App.1984), overruled, o.g., **Holladay v. State**, 709 S.W.2d 194, 195 (Tex. Crim. App. 1986)[a lengthy delay in asserting the right makes it difficult to prove denial of a speedy trial and tends to diminish the importance of the State's inability to excuse the delay]. Also, a defendant's motivation in asking for a dismissal rather than a prompt trial may attenuate his claim's strength. **Phillips v. State**, 650 S.W.2d 396, 401 (Tex. Crim. App. 1983); **Orosco v. State**, 827 S.W.2d 575, 577 (Tex.App.—Ft. Worth 1992, pet. ref'd), *cert.* denied, 506 U.S. 960, 113 S.Ct. 425, 121 L.Ed.2d 347 (1992).

Appellant's record fails to show that he employed the remedies afforded him under **Art. 42.12, §8(a)**, *supra*, or the State and federal constitutions before April 21, 1999. (Clerk's R., at 6); Compare **Davila**, 871 S.W.2d at 810. The first sign of Appellant's interest was on November 2, 1998, and that was a request for information. (Reporter's R. 5 "Defendant's Exhibit 5") In **Collins**, *supra*, Collins repeatedly challenged the State's motions. *Id.*, at 377-78.

Prejudice to Appellant Resulting from the Delay.

A defendant who invokes his right to a speedy trial is required to make some showing that the delay has been prejudicial. Accord **Hernandez**, 556 S.W.2d at 341. Prejudice should be assessed in the light of these interests which the federal right was designed to protect: 1) to prevent oppressive pretrial incarceration; 2) to minimize the accused's anxiety and concern; and 3) to limit the possibility that his defense(s) will be impaired. **Carney**, 573 S.W.2d at 27; **Flores**, 951 S.W.2d at 143; **Davila**, 871 S.W.2d at *id.*, each citing **Barker**, *supra*. The State will address those interests in their turn:

10

1)     The State did not contest or rebut Appellant's claim that he was subjected to pretrial incarceration on the strength of the State's original capias from May 30, 1998 through May 7, 1999, the date a hearing on his dismissal motion was heard. (Reporter's R. 3) However, mere passage of time is not prejudicial and will not result in a denial of a Speedy Trial. **Ramirez v. State**, 897 S.W.2d 428, 433 (Tex. App.--El Paso 1995, no pet.); **Oliver v. State**, 731 S.W.2d 149, 160 (Tex. App.--Ft. Worth 1987, pet. ref'd). Appellant's record also shows that he was being held during that time on two other charges. (Reporter's R. 3, Pp. 24-25, Lines 24-2).

2)     Appellant referenced no evidence that the delay caused him anxiety or concern. The Court is also asked to agree that any anxiety and concern which may have resulted from the delay can be assessed in light of the fact that Appellant was already facing two other charges, and received the benefit from the delay when he was finally sentenced. (Reporter's R. 4, P. 41, Lines 22-24); Compare **Carney**, 573 S.W.2d at 27.  Furthermore, a delay could only have benefited him as a factor bearing against the State's witnesses' credibility, whose memories were required to be tested over a longer period of time. **Collins**, 664 S.W.2d at 378; and

3)     Appellant failed to designate a defense to the State's third amended motion that was impaired by his incarceration, and a review of his revocation record shows he had none. (Reporter's R. 4); **O'Neal v. State**, 623 S.W.2d 660, 661 (Tex. Crim. App. 1981); **Greer v. State**, 999 S.W.2d 484, 486 (Tex. App.--Hous. [14th Dist.] 1999, no pet.).

Appellant asserts that the delay prejudiced him because the allegations in the State's third motion did not exist at the time he was arrested on the State's original motion.

11

*Brief*, at 11. If there were authority for such an argument, Appellant should have proffered it, or explain why this Court should favor it. The State, in its turn, asks the Court to consider that evidence of a single pre-amendment violation was sufficient to warrant a revocation. **O'Neal**, 623 S.W.2d at *id.*; **Greer**, 999 S.W.2d at *id.*; and 3) Appellant's argument fails to designate -- as if such a thing could be done -- the condition(s) he would not have violated had there been a hearing on the State's original motion within eight months of his arrest.

In **Greer**, *supra*, the appeals court made an observation that has an application here:

> Appellant presented this court with only an abstract assertion that his due process rights were violated, with no argument or analysis to support his contention and no meaningful citations to the record. Other than fleeting references to [rules of evidence], Appellant provides no discussion or analysis of relevant authorities or the record to support his argument, and did not address any of the governing legal principles or apply said principles to his case's facts. Under these circumstances, this Court should conclude that his Point has not been adequately preserved for review. *Id.*, at 488 n. 3, citing **Tex. R. App. Proc. 38.1(h)**.

STATE'S RESPONSE TO
APPELLANT'S SECOND POINT

Appellant complains that the trial court erred in failing to grant his motion to recuse the Cameron County District Attorney's Office, arguing that his constitutional rights to due process and a fair trial were violated. *Brief*, at 13 & 15. The State responds the Point should be overruled.

1.    THE LAW.

Although briefing rules are liberally construed, **Burke v. State**, 6 S.W.3d 312, 315 (Tex. App. -- Ft. Worth 1999, no pet.), **Rule 38.1(h)**, *supra*, provides that a brief "must

12

contain a clear and concise argument for the contentions made with appropriate citations to authorities and to the record." The State submits that said Rule means that Appellant had an obligation to set forth evidence raising an issue. **Janecka v. State**, 937 S.W.2d 456, 476 (Tex. Crim. App. 1996, *en banc*)[An appellate court is not bound to review contentions that depend upon factual assertions outside the record]; designate the place in his record where it can be found, **State v. Pierce**, 816 S.W.2d 824, 830 n. 8 (Tex. App.-- Austin 1991, no pet.); **Tooke v. State**, 642 S.W.2d 514, 517-18 (Tex. App. --Hous. [14th Dist.] 1982, no pet.)[an appellate court cannot accept as fact allegations or assertions in an appellate brief which are not supported by the record]; and support the contention by argument and applicable authority. **Sanders v. State**, 963 S.W.2d 184, 191 (Tex. App. -- Corpus Christi 1998, pet. ref'd); Accord **Menchaca v. State**, 901 S.W.2d 640, 649-50 (Tex. App.--El Paso 1995, pet. ref'd)[although Menchaca cited **U.S. Const. VI.**, he waived error because he did not cite relevant authority].

Conclusory arguments which cite no supporting authority present nothing for review. **McFarland v. State**, 928 S.W.2d 482, 512 (Tex.Crim.App.1996, *en banc*), *cert.* denied, 519 U.S. 1119, 117 S.Ct. 966, 136 L. Ed.2d 851 (1997); **Vuong v. State**, 830 S.W.2d 929, 940 (Tex.Crim.App.1992, *en banc*); **Atkins v. State**, 919 S.W.2d 770, 774-75 (Tex. App.--Hous. [14th Dist.] 1996, no pet.).   And when an appellant fails to discuss the evidence supporting his claim, he also presents nothing for review. **Burks v. State**, 876 S.W.2d 877, 910 (Tex. Crim. App. 1994), *cert*. denied, 513 U.S. 1114, 115 S.Ct. 909, 130 L.Ed.2d 791 (1995). Failure to properly brief an issue risks review. **State v. Gonzalez**, 820 S.W.2d 9, 12 (Tex. App. -- Dallas 1991), affirmed, 855 S.W.2d 692, 697 (Tex. Crim. App.

13

1993, *en banc*); **Sanders**, 963 S.W.2d at *id*.

Appellant cited no provision in the Code of Criminal Procedure that allows an accused to motion for a district attorney's office's recusal or disqualification. **Tex. Local Govt. Code, §87.013**, cited by Appellant, provides for such a removal, but addresses county officials, including the district attorney, and for only one of the causes enumerated in that Section. **State of Texas ex rel. Eidson v. Edwards**, 793 S.W.2d 1, 5 (Tex. Crim. App. 1990, *en banc*)(Op. on State's mot. for reh'g). In any case, a trial court may not disqualify a district attorney or his staff on a basis that does not rise to the level of a due process violation, **Hanley**, 921 S.W.2d at 909-10, and cannot remove a district attorney from office except under statutorily defined circumstances after a trial by jury. **Eidson**, 793 S.W.2d at 4-5.

The burden is on the movant to warrant a disqualification of a district attorney's office by establishing with specificity a violation of one or more of the disciplinary rules. Mere allegations of wrongdoing, unethical conduct, or evidence showing a remote possibility of a violation of the disciplinary rules will not suffice to disqualify a district attorney's office. **State ex rel. Hilbig v. McDonald**, 877 S.W.2d 469, 472 (Tex. App. – San Antonio 1994, no writ).

2.    THE RECORD.

Although Appellant's docket sheet shows that he filed a motion to disqualify the district attorney's office (Clerk's R. 6), he did not request it for the Court's review. (*Id.*, at 32) And although the trial court denied said motion (Reporter's R. 3, P. 83, Lines 11-13), Appellant did not object.

On appeal, Appellant simply references Vol. 2 of his record for the proposition that the Cameron County District Attorney's Office failed to "adequately" proceed with a hearing on its revocation motion and, as a result, his constitutional rights to due process and a fair trial were violated. *Brief*, at 13. However, Appellant's record shows these responses to his own inquiries whether he believed that his due process rights under the state and federal constitution have been violated by the State's failure: "Sir, from everything that I have ever been able to read -- as well read as I am, not that much -- it's obvious that I've been violated [*sic*], and laughed at" and "Yes, sir." And the reason for that belief: "Not enough room in the jails, maybe?" (Reporter's R. 3, P. 30, Lines 13-19, 23, 25)

In closing argument, Appellant simply claimed that he had been in custody for a long period of time. Yet, the State of Texas, through its district attorney's office and the Cameron County Probation Department, failed to take any action whatsoever to try to bring Appellant down here so he could have this hearing. Appellant then expressed a belief that there was a violation of his due process rights guaranteed by the State and federal constitutions. (P. 78, Lines 11-14)

As a result of the delay, Appellant believed the State added additional charges, additional failures to report, etc., and not only had he been prejudiced for being in custody and not being able to be released from custody, he was also been prejudiced because has had to answer to additional charges, which was a violation of his due process right. (Lines 15-24)

Furthermore, the Cameron County District Attorney's office had a vested interest in prosecuting Applicant  only it had been lax in prosecuting Appellant.  And the only purpose

15

or reason why a hearing was being conducted with the enthusiasm, was because Appellant was attempting to exercise his constitutional rights to a fair hearing.  In sum, Appellant believed the Office should be disqualified by law in prosecuting him because of their vested interest of presenting their own rights, and not actually the right of the State of Texas, as an agency of the State. (P. 79, Lines 1-18)

3.      AN APPLICATION OF THE LAW TO THE RECORD.

The State submits that this Point should be overruled through Appellant's failure to comply with **Rule 38.1(h)**, *supra*.  The State next submits the foregoing record shows there was no error.

In **Hanley**, *supra*, Hanley's recusal motion claimed that because of the district attorney's "prejudice" and "predisposition," he was charged with a felony rather than a lesser offense or none at all.  He also alleged that the district attorney knew or should have known that an investigating police officer had not met the minimum licensing requirements as a peace officer.  The appeals court noted that it could not say that Hanley's allegations rose to the level of a due process violation necessitating the disqualification of the district attorney and his staff. *Id.*, at 909-10.

Applying **Hanley** to this case, the Court should be able to find that Appellant's argument also does not support its allegation of a due process violation with a single record reference and that his record is certainly no worse than Hanley's.

STATE'S RESPONSE TO APPELLANT'S THIRD POINT

Appellant complains that the trial court erred in failing to grant his motion to recuse Judge Robert Garza, arguing that his constitutional rights to due process and a fair trial

16

were violated as a result of Judge Garza's bias. *Brief*, at 13, 15.  The State responds the Point should be overruled.

1.    THE LAW.

Respecting Appellant's obligations to have designated a timely and specific trial objection that comported with his appellate complaint and adequately briefed his argument with appropriate record references and applicable authority, the State simply references its foregoing responses in those regards.

Due process clearly requires a neutral and detached trial judge. **Earley v. State,** 855 S.W.2d 260, 262 (Tex. App.–Corpus Christi 1993), pet. dism'd, improvidently granted, 872 S.W.2d 758 (Tex. Crim. App.1994).  However, in the absence of a clear showing to the contrary, it is presumed that a trial judge was a neutral and detached officer. *Id.*

**Tex. R. Civ. Proc. 18a(a)** applies to criminal cases absent "any explicit or implicit legislative intent indicating otherwise." **Arnold v. State,** 853 S.W.2d 543, 544 (Tex. Crim. App. 1993).  In relevant part, **Rule 18a(a)**, *supra*, provides for a 10 day filing requirement for a verified motion:

> stating grounds why the judge before whom the case is pending should not sit in the case.  The grounds may include any disability of the judge to sit in the case. The motion shall be verified and must state with particularity the grounds why the judge before whom the case is pending should not sit.  The motion shall be made on personal knowledge and shall set forth such facts as would be admissible in evidence provided that facts may be stated upon information and belief if the grounds of such belief are specifically stated.

Appellate courts review a judge's denial of a motion to recuse by an abuse of discretion standard. **Tex. R. Civ. Proc. 18a(f); Kemp v. State,** 846 S.W.2d 289, 306 (Tex. Crim. App.1992, *en banc*), cert. den'd, 508 U.S. 918, 113 S. Ct. 804, 124 L. Ed.2d 268

17

(1993); **Bruno v. State**, 916 S.W.2d 4, 6 (Tex. App.--Hous. [1st Dist.] 1995, pet. ref'd), reh'g denied, 937 S.W.2d 121 (Tex. App.--Hous. [1st Dist.] 1996, no pet.). The test for an abuse of discretion is whether the record supports a finding that the trial court acted without reference to any guiding rules and principles, not whether, in the opinion of the reviewing court, the facts present an appropriate case for the trial court's action. **Bruno**, 916 S.W.2d at 6. No abuse of discretion occurs if the ruling is within the zone of reasonable disagreement. **Kemp**, 846 S.W.2d at 306. Even if the lower court gives a "wrong reason" for its decision, an appellate court will sustain the decision if it is correct on any theory of law which is supported in the record. <u>Accord</u> **Bee v. State**, 974 S.W.2d 184, 190 (Tex. App.--San Antonio 1998, no pet.)(discussing standard in context of review of evidentiary rulings).

A movant must show that any bias or prejudice on the part of the trial judge is of an extrajudicial origin, not something that occurred during the proceedings themselves. **Kemp**, 846 S.W.2d at 305; <u>Accord</u> **Ludlow v. DeBerry**, 959 S.W.2d 265, 270 (Tex. App.-- Hous. [14th Dist.] 1997, no pet.). And a judge's ruling on a motion alleging bias as a ground for disqualification must decide whether the movant has provided facts sufficient to establish that a reasonable person, knowing all the circumstances involved, would harbor doubts about a trial judge's impartiality. **Kemp**, 846 S.W.2d at 305. Bias may be a ground for disqualification only when it is shown to be of such a nature and to such extent as to deny the defendant due process of law. *Id*.

2.    THE RECORD.

The State first submits that Appellant's motion, which he did not proffer on appeal

(Clerk's R., at 32), was untimely filed (*Id.*, at 5), **Arnold**, 853 S.W.2d 544-55, and his argument does not state that he could not have known the basis for Judge Garza's recusal until after its filing was untimely. **Stafford v. State**, 948 S.W.2d 921, 925 n. 6 (Tex. App.--Texarkana 1997, pet. ref'd). In fact, his record shows that he had long suspected Garza was biased against him. Therefore, even if there had been a valid ground for recusal, having failed to file a timely motion, Appellant waived this complaint. **Soderman v. State**, 915 S.W.2d 605, 608 (Tex. App.--Hous. [14th Dist.] 1996, pet. ref'd).

During the hearing on Appellant's motion to recuse Judge Garza, Appellant was first asked by Mr. Padilla, his trial counsel, whether Appellant believed that if he was afforded a hearing "on the actual hearing on Motion to Revoke [*sic*], that there is a chance that the Court may not give you a fair hearing on this matter?" Appellant's answer was as equally ambiguous. (Reporter's R. 2, P. 7, Lines 1-12) Appellant was then asked if he felt that regardless of "what the evidence may show at trial, that the Judge is predisposed to believe that you have violated the Motion to Revoke?," to which he responded, without explanation, "I am certain of it." (Lines 13-16)

Appellant was then asked about "an exchange" between him and Judge Garza, to which he responded:

> "I don't remember exactly. I told -- I immediately, when Judge Garza was laughing and says, well, we'll just go ahead on it, forget it, you know, it was like basically just I don't care, forget about all that, that don't matter. I said, you know, I want another Judge, and he said, well, you are not going to get another Judge. And I said, well, you are prejudiced. He said, well, I am glad you think so. And the only other thing for certain I can remember is saying that, like I said again, my temper was up, so I turned and I said, well, you need to get a life. And he said, I have got a life. And I said, a rotten one, or I think I used some foul language, but -- and there was some other statements that I don't really recall completely." (P. 8, Lines 8-21)

19

Appellant was then asked if he believed that if Judge Garza was to continue to hear the Motion to Revoke, "that outburst or that exchange may bias or prejudice the Judge toward the merits of your hearing on the Motion to Revoke?," to which Appellant answered, "I believe it could." (Pp. 8-9, Lines 22-1)

Later, Appellant was asked if he believed that "if the Motion to Revoke is heard by Judge Garza, you believe that you would not be afforded a fair hearing and this would violate your Constitutional rights to due process and a fair trial, is that your understanding?," to which he responded that it was. (P. 17, Lines 18-25)

In cross-examination, Appellant claimed that part of his "problem" was that he thought Judge Garza was mad at Appellant because "you told him to get a life?" (P. 12, Lines 13-16)  Appellant claimed that comment was initiated when Judge Garza "ignored the fact that there was a due process factor involved.  Laughingly so, ignored it." (Lines 21-23)   As regards Appellant's motion, he was "pretty sure that [Garza] has been told everything" and, therefore, prejudiced against him. (P. 13, Lines 8-25) For that matter, based on Appellant's courtroom observations, he concluded that Judge Garza was "prejudiced against anyone that comes in his courtroom that's not an attorney" (P. 14, Lines 1-7), and refused to hear facts. (Line 16)

Appellant also claimed that his "problem" was not just that Judge Garza got mad with him because he behaved inappropriately in court; Judge Garza was very angry at Appellant two years ago, and got angrier at him.  Judge Garza was even angry at Appellant's jury for giving him probation. (P. 17, Lines 1-10)

In redirect, Appellant reiterated his belief and understanding that if the State's

20

Motion to Revoke was heard by Judge Garza, he "would not be afforded a fair hearing, and this would violate his Constitutional rights to due process and a fair trial." (Pp. 17-18, Lines 17-3)

3.    AN APPLICATION OF THE LAW TO THE RECORD.

Appellant failed to properly brief his Point by applying the appropriate standard for review to the facts of his case. **Rule 38.1(h)**, *supra*.   Therefore, error, if any, was waived.

Appellant's argument also fails to address the fact that he didn't object to the trial court's ruling. (Reporter's R. 2, Pp. 22-23, Lines 25-6)  Therefore, error, if any, was again waived.  The State next submits Appellant's record fails to show an abuse of discretion in that Appellant did not elicit evidence from any source, including Judge Garza himself, to show that Garza had a bias against him; if Garza did have a bias, it certainly would have been apparent in Appellant's revocation record.   In contrast, Garza found as True the violation of some conditions, but Not True as to others. (Reporter's R. 4, P. 40, Lines 14-23)  Finally, the Court is next asked to notice the strength of the State's revocation evidence which Appellant does not challenge.

Wherefore, premises considered, the State prays the Court of Appeals will overrule Appellant's three Points, and affirm his judgment of conviction.

21

RESPECTFULLY SUBMITTED BY:

Yolanda de Leon
Cameron County
(Criminal District) Attorney

John A. Olson
Assistant County
(Criminal District) Attorney
974 East Harrison Street
Brownsville TX    78520
956.544.0849/544.0869 FAX
Texas Bar No. 15274750
Board Certified, Criminal Law
Tex. Board of Legal Specialization
JAOLSON_CCDA@YAHOO.COM

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing State's appellate Brief was mailed by first class mail
to the Law Office of Alfredo Padilla, 1000 E. Monroe, City TX. 78520, attorney for Appellant
Edward Lafontaine, on May 3, 2000.

JOHN A. OLSON

e:\99-329.brf

22